Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2488 | **DATE** | 1/16/2004 |
| **CASE TITLE** | Patricia Eagon vs. Patrick Libertyville Automobiles | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment (18-1) is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 20 2004 | |
| | Notified counsel by telephone. | date docketed | 27 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
JAN 2 0 2004

| | |
|---|---|
| PATRICIA EAGON, | ) |
| Plaintiff, | ) |
| | ) 03 C 2488 |
| v. | ) |
| | ) Judge George W. Lindberg |
| PATRICK LIBERTYVILLE AUTOMOBILES, INC., an Illinois corporation d/b/a PATRICK PONTIAC-GMC TRUCK, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Eagon brought this action against defendant Patrick Libertyville Automobiles, Inc., alleging claims of sexual harassment (Count I), sex discrimination (Count II), and retaliation (Count III) under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Before the court is defendant's motion for summary judgment. For the reasons stated below, defendant's motion is granted.

### 1. Factual Background

Defendant is an automobile dealership. Plaintiff began working for defendant in 1986, and became the office manager in May 1997. As office manager, plaintiff supervised six employees. Her supervisor was Tom Scoleri.

During the time relevant to this action, Jim Riba was an assistant manager in defendant's service department. Riba had no supervisory authority over plaintiff. Beginning in October 1999, Riba began to make unwanted sexual advances to plaintiff. Between October 1999 and December 2000, plaintiff made numerous complaints to Scoleri and various managers about

Riba's advances and sexual comments.

On March 9, 2001, plaintiff sent a letter to defendant's owner, complaining that Riba had been sexually harassing her. After plaintiff sent her letter, Scoleri met with plaintiff to discuss it. Scoleri was angry that plaintiff had gone over his head to complain directly to the owner. Defendant retained an outside attorney to investigate plaintiff's complaint. On April 6, 2001, after the attorney issued a report containing his findings, defendant issued Riba a verbal and written warning.

Plaintiff does not dispute that after March 2001, the sexual harassment she perceived diminished. However, plaintiff claims that Riba continued to make advances to her, and make offensive comments to her and about her, after March 2001. In addition, according to plaintiff, after she sent the March 2001 letter, many of her co-workers stopped talking to her, and she was given the additional duty of answering telephones.

In the summer of 2001, Scoleri observed that on some days, plaintiff would come to work with an attitude problem. During the same period, three managers complained to Scoleri that plaintiff had a bad attitude and that they were not able to deal with her on a day-to-day basis. The managers advised Scoleri that plaintiff responded with disgust to their work-related questions or requests. According to Scoleri, he performed some of plaintiff's duties because other employees did not want to approach plaintiff.

In August 2001, Scoleri met with plaintiff to counsel her about her attitude in the workplace and her dealings with her co-workers. After the August 2001 meeting, Scoleri did not receive any further complaints from other managers about plaintiff, and he observed only that plaintiff appeared very quiet at work.

In September 2001, Scoleri heard plaintiff tell another employee that she could not stand working at the dealership. On September 21, 2001, Scoleri met with plaintiff and directed her to write him a note explaining why she made the comment. Plaintiff wrote Scoleri a note stating that she had made the comment because she did not feel that she was appreciated. On September 24, 2001, Scoleri terminated plaintiff's employment.

## II. Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A. Discrimination and Harassment (Counts I and II)

Defendant argues that it is entitled to summary judgment on plaintiff's discrimination and harassment claims because the factual allegations contained in those claims are time-barred. In Illinois, a discrimination charge must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the alleged unlawful employment practice occurred that forms the basis for the charge. See 42 U.S.C. § 2000e-5(e); Sharp v. United Airlines, Inc.,

3

236 F.3d 368, 372 (7th Cir. 2001). Plaintiff filed her EEOC charge on May 16, 2002. Defendant maintains that any acts occurring prior to July 20, 2001 – the 300th day before May 16, 2002 – are time-barred.

Plaintiff responds that some of the acts about which she complains *did* occur within the 300-day filing period, and that the court may consider acts that occurred prior to that period under the continuing violation doctrine. In her Statement of Additional Undisputed Material Facts and supporting affidavit, plaintiff states that Riba harassed her in the following ways during the 300-day filing period:

- Riba asked plaintiff out in August 2001, and again after Labor Day 2001. When plaintiff declined Riba's August invitation, Riba called her a "slut," and when plaintiff declined his September 2001 invitation, Riba stated that plaintiff was a "fucking bitch not worth his time anyway."

- Riba referred to plaintiff as a "slut," "whore," "psycho bitch," and "fucking bitch" in conversations he had with others in plaintiff's presence.

- Shortly before plaintiff's birthday in August 2001, after plaintiff had walked by him, Riba told an employee,"yea, I'm going to give her some. Bang the bag for her birthday."

- In September 2001, after plaintiff had complained to Scoleri that Riba had refused to send a porter to get her car, Riba told plaintiff he was sorry and asked to make it up to her. As he said this, Riba gyrated his hips back and forth, pushing his pelvis out toward her in a sexually offensive manner.

- At least once every other week through September 24, 2001, Riba looked directly at plaintiff and gave her "the finger."

- Through September 24, 2001, every time plaintiff walked past Riba in the service area, she heard Riba grumble under his breath at her.

Defendant urges the court to disregard these factual assertions as a sham attempt to create an issue of fact to survive summary judgment. Defendant notes that these assertions appear for the first time in plaintiff's affidavit filed in support of her response to defendant's summary

4

judgment motion, and that they contradict plaintiff's deposition testimony. Specifically, on November 18, 2003, plaintiff testified in her deposition that Riba did not make any comments directly to her after February 2001. At the continuation of her deposition on December 3, 2003, plaintiff testified that she did not recall if Riba made any derogatory comments in reference to her after May 2001, and that she was not aware of Riba referring to her as a "slut" after May 2001.

Affidavits that contradict the affiant's deposition are entitled to no weight in summary judgment proceedings, unless the affidavit contains a plausible explanation for the discrepancy. Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 623-24 (7th Cir. 2002). Plaintiff concedes in her affidavit that she recalled the incidents at issue after her deposition, but explains that "[d]ue to the obvious stress and trauma I have been under, my memory has been effected [sic] and after several hours of deposition, I was having difficulty remembering everything that happened to me." She notes in her affidavit that she had a breakdown on November 18, 2003.[1]

The court finds plaintiff's explanation implausible. Plaintiff offers no support for her claim that she suffered a memory loss during her deposition. To the contrary, during her deposition, plaintiff was able to recall many other incidents, dating as far back as 1999. Nor is the court persuaded that plaintiff's November 19, 2003 breakdown adversely affected her memory. Indeed, on December 3, 2003, plaintiff testified that she remembered *more* about the time when she was employed by defendant as a result of the breakdown. Plaintiff's recent recollection of incidents that conveniently occurred during the 300-day filing period simply is not

---

[1] Plaintiff testified on December 3, 2003 that the breakdown had occurred on November 19, 2003.

plausible. Accordingly, the court disregards these allegations.[2]

Without these allegations, plaintiff has no evidence of incidents of discrimination or harassment that occurred within the 300-day filing period. Plaintiff filed her EEOC complaint more than 300 days after her discrimination and harassment claims accrued, and thus the complaint was untimely. Summary judgment is entered in defendant's favor on Counts I and II of plaintiff's complaint.

### B. Retaliation (Count III)

Defendant also argues that it is entitled to summary judgment on plaintiff's retaliation claim. Plaintiff contends that following her complaint of sexual harassment and discrimination in March 2001, defendant undertook a course of conduct designed to force plaintiff to leave defendant's employment, including directing plaintiff to answer telephones, which plaintiff contends was a material change in her job duties tantamount to a demotion; ostracizing her; denying her overtime opportunities; and vandalizing her car. In addition, plaintiff contends that defendant retaliated against her by terminating her and providing false information to plaintiff's prospective employers.

To survive summary judgment where a plaintiff has no direct evidence of retaliation, under the McDonnell Douglas analytical framework, the plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) she engaged in statutorily protected expression; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and

---

[2] Even if these allegations were plausible, they would not support plaintiff's discrimination and harassment claims, since there is no evidence that defendant was aware of the incidents. See Shepherd v. Slater Steels Corp., 168 F.3d 998, 1004 (7th Cir. 1999) (to hold employer liable for harassment of employee by co-worker, plaintiff must establish that employer knew or had reason to know about the harassment).

(4) no other similarly situated employee who did not file a complaint was subject to the adverse employment action. See Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir.), cert. denied, 537 U.S. 879 (2002). If the plaintiff makes this showing, the burden shifts to the defendant to state a legitimate reason for the action. See id. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual. See id.

Defendant does not dispute that plaintiff engaged in statutorily protected expression when she complained about sexual harassment, or that her termination constituted an adverse employment action. Although plaintiff claims that incidents other than her termination also constituted retaliation, the court finds that plaintiff has offered no evidence of some of these incidents. For example, plaintiff has offered no evidence to support her claim that defendant retaliated against her by providing false information to plaintiff's prospective employers. Nor does plaintiff offer any evidence that one of defendant's employees was responsible for vandalizing her car. In addition, plaintiff supports her claim that she was retaliated against by being denied overtime opportunities solely through her affidavit; plaintiff failed to mention this claim when directly questioned about the bases for her retaliation claim at her deposition. Therefore, the court disregards plaintiff's statements of fact relating to overtime for the same reason as it disregards her statements relating to incidents of harassment occurring during the 300-day filing period.

Plaintiff's remaining allegations of retaliation, other than her termination, whether considered individually or collectively, do not amount to materially adverse employment actions. Not every action that makes an employee unhappy is actionable. Cullom v. Brown, 209 F.3d 1035, 1041 (7th Cir. 2000). Rather, an action must be materially adverse; it must be more than a

7

mere inconvenience or an alteration of job responsibilities. Ribando v. United Airlines, Inc., 200 F.3d 507, 510-11 (7th Cir. 1999). Examples of materially adverse actions include termination; or a demotion evidenced by a decrease in pay, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. Id.

First, plaintiff's claim that she was ostracized by co-workers and management after she made her March 2001 complaint does not rise to the level of an adverse employment action. Ostracism may constitute an adverse employment action where "an employer orders its employees to shun the plaintiff, provided that this activity causes material harm to the plaintiff." Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1039 (7th Cir. 1998). Here, although plaintiff testified that virtually every employee at the dealership stopped talking to her after she sent her March 2001 letter, she offers no evidence that defendant directed the employees to ostracize her or that she suffered material harm as a result. In addition, although plaintiff testified that Scoleri, her supervisor, also stopped talking to her and was hostile after March 2001, plaintiff conceded that Scoleri continued to talk to her about work-related issues. Since there is no evidence that defendant ordered any of its employees not to talk to plaintiff, or that the alleged ostracism resulted in material harm to plaintiff, this conduct does not amount to an adverse employment action.

Nor is the court persuaded by plaintiff's claim that being assigned to answer telephones was equivalent to a demotion. Plaintiff testified that before she sent her March 2001 letter, she was required to answer the telephones only a couple of times, and that others also were required to answer the telephones. According to plaintiff, beginning in March 2001, Scoleri directed plaintiff to answer the telephones while the person responsible for answering the telephones was in training. Plaintiff testified that she answered the telephones from four to six hours almost every day until June or July 2001. According to plaintiff, there were five or six other employees who could have been assigned to answer the telephones, but that she was required to answer the telephones ninety percent of the time during that period. While this additional temporary duty

8

may have been an inconvenience, the court finds that it does not constitute an adverse employment action.

Although plaintiff's termination was an adverse employment action, plaintiff does not establish a prima facie case of retaliation based on her termination, because plaintiff has failed to offer evidence that any similarly situated employee who did not complain was not terminated. Plaintiff asserts in her affidavit that other employees made negative comments about the dealership and were not terminated or even disciplined. In addition, Scoleri testified that although other employees had made negative comments about the dealership before, he had never terminated any other employee for having a bad attitude. However, plaintiff fails to offer evidence that management had previously received complaints that other employees who had made negative comments had bad attitudes, as it had about plaintiff before she made her comment that she could not stand working at the dealership. Nor does she offer evidence that management had previously counseled these employees about their attitudes, as it had with plaintiff. Since plaintiff has failed to establish this element of the prima facie case, her retaliation claim does not survive summary judgment under this analysis. See Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir.), cert. denied, 537 U.S. 820 (2002) (the inability to prove even a single element of the prima facie case is fatal to a retaliation claim).

**ORDERED:** Defendant Patrick Libertyville Automobiles, Inc.'s motion for summary judgment [18-1] is granted. Judgment in favor of defendant and against plaintiff will be set forth on a separate document and entered in the civil docket. See Fed. R. Civ. P. 58.

ENTER:

*George W. Lindberg*
George W. Lindberg
Senior United States District Judge

DATED: JAN 1 6 2004

9